## Stein v. Meyers Brothers Parking System, Inc.

*Lawrence R. Lesser,* for plaintiff.
*Gilbert Stein,* for defendants.

BARBIERI, J., January 6, 1975—In this equity action, plaintiff, Morris Stein (Stein), seeks equitable support for his contention that he is entitled to keep alive a claim for brokerage commissions due him and another broker, not joined in the action, for the services in negotiating the lease of public automobile parking facilities from the landlord, Holimark Company (Holimark) to Holimark's tenant, Meyers Brothers Parking System, Inc. (Meyers). The parking facility is located in downtown Philadelphia as part of the hotel premises of Holiday Inn at Eighteenth and Market Streets. The lease agreement, dated March 16, 1970, is for the term of 22 years, with an option to renew for an additional 10 years. The termination of the tenancy by defendants on July 3, 1974, is the event that brought on this suit.

Article XXIX of the lease agreement contains the brokers' commission agreement involved in this action. It provides for the brokers' commissions to be paid periodically during the term of the lease under an assignment therein whereby the commissions due were payable by Meyers out of rentals due from Meyers to Holimark. The brokers were to receive $2,500 each year for two years after the effective date of the lease agreement. Additional fees for succeeding years would be contingent on receipts and be computed by a formula set forth in article XXIX, based upon the rental provisions as outlined in article IV of the agreement.

It is undisputed that the initial $5,000 due for the first two years was paid to the brokers, that no other fees were received by the brokers, but that, under the formula, no other commission payments ever became due or payable prior to the date of cancellation of the lease. Meyers admits that nothing is due him now, but contends that, if the lease had not been terminated, some further commissions could possibly fall due in the future. He argues that the termination was collusive and illegal under the applicable lease provisions. In answer, defendants assert that plaintiff's rights were subject to the right of defendants to terminate their lease agreement, and that, therefore, the termination was entirely legal under the terms of the lease.

The parties have stipulated to the relevant circumstances, but plaintiff has reserved the right to adduce testimony if the court's decision is that a cause of action exists. We have concluded that the case lacks equity and that plaintiff's complaint must be dismissed.

On February 20, 1974, Meyers notified Holimark that, pursuant to the terms of article XVII of the lease, Meyers was exercising its option to substitute a new rent formula for the one then in effect. Inter alia, article XVII provided that should the Federal Government, or any other unit of government, promulgate a regulation materially reducing the availability of gasoline for automobile use in the area, Meyers would be permitted to convert to the more favorable rent formula. However, article XVII further provided that should Meyers exercise this option to convert, Holimark was free to terminate the lease.

It is not denied that, effective January 15, 1974, the Federal Energy Office instituted a Federal

gasoline emergency allocation program affecting downtown Philadelphia. On February 20, 1974, Meyers exercised its option to convert to the substitute rent formula. On July 3, 1974, Holimark terminated the lease.

Plaintiff contends, notwithstanding the obvious and admitted circumstances, that, under the terms of the lease, Meyers must show that the fuel allocation program put into effect by the Federal Government was detrimental to Meyers' operation of the garage; that, furthermore, the subsequent termination of the lease on July 3, 1974, by Holimark was invalid, because by July, 1974, there no longer was a gasoline shortage or crisis. We do not agree.

The pertinent portion of article XVII of the lease, entitled "Government Regulations," reads:

"SECTION 1. Grounds for Substituted Rent. If any time during the term of this Lease, any Federal, State, County or City government, or any department or subdivision thereof (hereinafter referred to in this Article as 'any governmental authority') shall enact, *promulgate* or put into effect any law, ordinance, rule, order, regulation, or direction (1) which shall regulate the use of gasoline so as to impose material limitations or restrictions thereon, or on pleasure car driving, or on the sale of tires, or on any or all of them; . . . " (Emphasis supplied.)

The promulgation and its material effect are not questioned. Only the extent of its effect is deemed by plaintiff to be open to question.

We do not read into the termination clauses which were available to be invoked by defendants any requirement that the interests of plaintiff be consulted or considered. His right to commissions was totally subject to the consensual conclusion of the lease which took place, short of a motivation for

the termination that had the sole and fraudulent purpose to deny commission rights that plaintiff would otherwise have.

In fact, section 2 of article XXIX contains the sole protective clause: that the landlord not "agree to any modification or adjustment of this Lease which would reduce the Joint Brokers' rent entitlements." Defendants here acted under the lease's terms and not by way of modification or adjustment thereof.

Finally, no claim for any sum due, or which is capable of computation in the future, is now asserted.

Accordingly, since the case lacks equity, but also fails to present any cause of action now available to plaintiff on the law side of the court, the suit must be dismissed.

## ORDER

And now, January 6, 1975, the complaint is dismissed.